

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2006

# USA v. Podgers

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3617

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Podgers" (2006). *2006 Decisions.* Paper 279.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/279

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-3617

UNITED STATES OF AMERICA

v.

SUSAN C. PODGERS,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 04-CR-228
District Judge: The Honorable David S. Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 26, 2006

Before: SMITH, WEIS, and NYGAARD, *Circuit Judges*

(Filed: October 30, 2006)

OPINION

SMITH, *Circuit Judge*

Susan C. Podgers was receiving federal worker compensation benefits for a partial

disability. Nevertheless, she began performing child care services in 1999. Thereafter,

1

she falsely affirmed in several affidavits submitted to continue her federal worker compensation benefits that she had no other employment or income. A grand jury subsequently returned an indictment charging Podgers with four counts of violating 18 U.S.C. § 1920 by making false statements to obtain federal benefits.[1] Pursuant to a plea agreement, Podgers pleaded guilty to count one of the indictment. The plea agreement contained a waiver of appellate rights, which permitted an appeal only if the United States appealed, the sentence exceeded the applicable statutory limits set forth in the United States Code, or the sentence unreasonably exceeded the applicable guideline range.

The pre-sentence report (PSR) prepared by probation indicated that the amount of loss was $13,963.48. This total represented the difference between the amount of benefits she actually received and the amount she would have received if she had been truthful. Based on this figure and a downward adjustment for an acceptance of responsibility, Podgers' total offense level was 8. Because Podgers' criminal history category was I, her guideline range was zero to six months of imprisonment. Restitution was required pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3664.

---

[1]Section 1920 provides in relevant part:
> Whoever knowingly and willfully . . . makes a false, fictitious, or fraudulent statement or representation . . . in connection with the application for or receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury, and on conviction thereof shall be punished . . . .

18 U.S.C. § 1920.

Based on 5 U.S.C. § 8106, the PSR set the amount of restitution at $57,472.56, representing the entire sum that she received in benefits from 2000 to 2003. Section 8106 pertains to the payment of worker compensation benefits for a partial disability and specifies that an employee who knowingly omits or understates any of his earnings "forfeits his right to compensation . . . ." 5 U.S.C. § 8106(b). Podgers did not object to the PSR's findings.

At sentencing, in response to the Court's inquiry as to whether there were any additions, corrections, or modifications to the PSR, Podgers advised that there were only several technical corrections. Because there were no other objections to the PSR's findings, the Court adopted the PSR as its final findings and rulings. Although Podgers did not object to the amount of restitution, the prosecution advised the District Court that there was a disagreement as to whether the $13,963.48 amount of loss governed the amount of restitution due, and that the government's position was that 5 U.S.C. § 8106 required that the defendant forfeit the entire amount of the benefits she had received, *i.e.*, $57,472.56.

The District Court sentenced Podgers to a three year term of probation, with home detention for the first four months. In addition, the Court ordered Podgers to pay restitution in the full amount of $57,472.56.

Despite the fact that Podgers waived her appeal rights, she filed an appeal challenging the amount of restitution ordered by the District Court. The District Court

3

exercised jurisdiction pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction under 18 U.S.C. § 3742(a).  *See United States v. Cooper*, 437 F.3d 324, 327-28 (3d Cir. 2006).

Podgers argues that the District Court erred by ordering restitution equal to the entire amount of benefits she received.  She asserts that § 8106 applies to forfeiture and does not govern restitution.   In response, the government argues, *inter alia*, that Podgers waived her right to appeal under the terms of the plea agreement.  Podgers' reply contends that her appellate waiver does not bar this appeal because the "plain language of the plea agreement" specified that she waived only her right to "take a direct appeal from her conviction or sentence."  She asserts that "[r]estitution is different from either a conviction or a sentence."  Alternatively, Podgers argues that this appeal falls within the exception for a sentence that exceeds the statutory limits of the United States Code.  We review the validity of an appellate waiver *de novo*.  *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

Podgers' assertion that her appellate waiver does not apply because restitution is different from a conviction and sentence is meritless.  In *United States v. Leahy*, 438 F.3d 328 (3d Cir. 2006) (en banc), this Court reaffirmed that restitution ordered as part of a criminal sentence is a criminal penalty.  *Id.* at 333-35.  Here, in imposing sentence, the District Court ordered that Podgers pay restitution and that aspect of her punishment is set forth in the judgment issued by the District Court.   Thus, the appellate waiver applies to this component of Podgers' sentence.

Podgers' alternate contention is that the amount of restitution ordered exceeds the statutory provisions of the Criminal Code and that this entitles her to proceed with her appeal under one of the exceptions to the appellate waiver in the plea agreement. Podgers does not explain why restitution for the full amount of the benefits exceeds the statutory limits of the Criminal Code. Instead, she asserts generally that the Victim and Witness Protection Act and the Mandatory Victims Restitution Act, *see* 18 U.S.C. §§ 3663, 3663A, and 3664, require the "accurate calculation of restitution." An inaccurate calculation of restitution, however, is not necessarily determinative of whether that amount exceeds the statutory limit. Section 3664(f)(1) of the Mandatory Victims Restitution Act, which is applicable in this criminal matter, mandates that "the court shall order restitution to each victim in the full amount of each victim's losses."

In considering whether the full amount of the government's loss may be the entire amount of the benefits received, our decision in *United States v. Tupone*, 442 F.3d 145 (3d Cir. 2006), is instructive.[2] There, we distinguished

between the task of evaluating the text of § 1920 proper and that of

---

[2]We do not consider 5 U.S.C. § 8106 dispositive of the quantification of the full amount of the government's loss in this criminal matter. Section 8106 is a civil statute which deters the making of false statements in connection with the receipt of federal benefits by creating a civil forfeiture remedy so the government may recover the entire amount of the benefits that were paid. *See United States v. Dawkins*, 202 F.3d 711, 715 (4th Cir. 2000) (finding that automatic forfeiture provisions applicable to a conviction for making false statements were not determinative of the amount of loss under the sentencing guidelines because forfeiture is a penalty governed by a separate statutory framework).

5

measuring the "loss" amount under the Guidelines resulting from a violation of that text. The former task involves assessing the breadth and level of culpability- and liability-prescribed by the language of § 1920. As discussed above, Congress, in passing § 1920, ascribed felony liability to the making of false statements in connection with the application for or receipt of benefits in excess of $1000. For the qualitative purpose of measuring criminal liability, then, *all* the benefits which a defendant applies for or receives must necessarily be "counted."

442 F.3d at 154 (emphasis in original).

*Tupone* instructs that the criminal liability under § 1920 is for "*all* the benefits which a defendant applies for or receives . . . ." *Id.* (emphasis in original). Thus, the order requiring Podgers to pay restitution for the full amount of the benefits received does not exceed the limits set forth in the United States Code. Moreover, the record supports a finding that the full amount of the government's loss for restitution purposes is the entire amount of the benefits received. The PSR, to which Podgers did not object, recited that upon learning of her false statements, the government offered Podgers a sedentary position, that she declined the offer, and that her benefits were terminated because of her refusal to accept suitable work. Thus, there is a strong inference that had the government learned of the falsehood at an earlier point in time, it would not have disbursed the benefits that Podgers received. Accordingly, we conclude that Podgers has failed to show that her sentence exceeds the statutory limits of the United States Code such that it is exempt from the terms of the waiver of appeal rights contained in the plea agreement.

In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), we declared that "waivers of appeals, if entered into knowingly and voluntarily, are valid." *Id.* at 562. We

recognized that some waivers may be invalidated if there is an error amounting to a miscarriage of justice. In determining whether an error warrants invalidating an appellate waiver, we observed that consideration should be given to the alleged error, its gravity, its character, the impact of the error on the parties, and the extent to which the defendant acquiesced in the result. *Id.* at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25 (1st Cir. 2001)). We declared that it is the defendant who bears the burden of showing why the appellate waiver should not be enforced. *Id.*

Here, Podgers does not assert that she misunderstood the waiver of appeal rights contained in the plea agreement. Nor has she claimed that she was coerced or pressured to agree to the terms of the plea agreement such that waiver is involuntary. The record shows that Podgers executed the plea agreement containing the waiver of her appeal rights. The transcript of the guilty plea colloquy supports the District Court's finding that she made "a knowing, voluntary and informed decision to enter a plea of guilty . . . ."[3]

---

[3]As we pointed out in *Khattak*, the role of the sentencing judge is critical in determining whether a waiver of appeal is knowing and voluntary. 273 F.3d at 563. We take this opportunity to reiterate that the waiver of a right to file a direct appeal is of profound significance and that district judges must carefully comply with the dictates of Federal Rule of Criminal Procedure 11. *Id.* Accordingly, when we are asked to review the enforcement of an appellate waiver, we scrutinize the guilty plea colloquy to ascertain if the district court has "inform[ed] the defendant" and "determine[d] that the defendant understands . . . the terms of any plea agreement provision waiving the right to appeal . . . ." Fed. R. Crim. P. 11(b)(N). Thus, our inquiry is informed, at a minimum, by (1) the specificity of the court's explanation of the waiver of the appeal and the extent to which it limits the defendant's ability to challenge his conviction or sentence; (2) the defendant's responses to the court's explanation; (3) the existence of any documentation referring to this waiver; (4) whether the defendant executed such documentation; and (5) the extent to

Although we have recognized that a waiver may be invalidated by an error that results in a miscarriage of justice, Podgers has not identified any error which would warrant setting aside her waiver of appeal. Moreover, we note that Podgers acquiesced in the result as she did not present any argument during the sentencing hearing challenging either the amount of or the basis for the restitution set forth in the PSR. Accordingly, we conclude that the waiver provision of the plea agreement is enforceable, and we will dismiss this appeal.

---

which the prosecution has reviewed the waiver in its remarks to the court prior to the court's colloquy.